Syllabus.

## Richmond

### LILLIE P. ELLIS v. VIRGINIA RAILWAY AND POWER COMPANY.

January 19, 1922.

Absent, Saunders, J.

1. CARRIERS—*Street Railways—Injury to Passenger Upon or After Alighting—Burden of Proof.*—In an action by a street car passenger for injuries received while alighting, or immediately after alighting from the car, the burden of proof was on the passenger to show, either that she was not given time to alight, or that, after alighting, she was not given time to clear the car and reach a place of safety before the car started again.

2. EXPERT AND OPINION EVIDENCE—*Res Gestae—Whether Statement a Mere Expression of Opinion.*—In an action by a street car passenger for injuries received while alighting, or immediately after alighting from the car, the court refused to allow plaintiff to testify that immediately after the accident the motorman came up and said it was not his fault, to which a third party said, "It was your fault; you hardly gave me time to get out of the way, and I was in front of her."

   *Held:* That while it might be objected that the expression "It was your fault" was a mere expression of opinion, the statement, "You hardly gave me time to get out of the way, and I was in front of her," is a statement of fact which the declarant as a witness might properly have been allowed to make.

3. RES GESTAE—*"Spontaneous Declaration"—General Rule.*—The practical rule as to the admissibility of statements as a part of the *res gestae,* or, in other words, whether a statement is admissible as a "spontaneous declaration" under an exception to the hearsay rule, seems to be that the declaration must have accompanied the main fact, or must have followed under its immediate propulsion, must bear no evidence of reflection or deliberation or calculation, and must have been a spontaneous, undesigned, and illustrative incident or part of the litigated act.

4. RES GESTAE—*General Rule—Incapable of Express Definition—Discretion of Lower Court.*—The *res gestae* rule is incapable

of any precise definition. Its application to a particular case depends upon the circumstances of that case, and necessarily rests at last in every instance upon the discretion and judgment of the trial court. Such discretion and judgment, of course, may be the subject of review, but in doubtful cases there ought to be and is a presumption in favor of the action of the court below.

5. RES GESTAE—*Appeal and Error—Discretion of Lower Court.*— Where the question of the admissibility of a declaration under the *res gestae* rule is not free from doubt, but it is not manifest that the trial court's decision was wrong, the action of the trial court will be affirmed.

6. RES GESTAE—*Appeal and Error—Exclusion of Testimony Held Harmless.*—In an action for injuries received while alighting from a car, if plaintiff had been permitted to testify that a third person made a statement to the effect that the motorman started his car before she had time to get clear, she would not have bettered her position, because of the conflict between this third party's testimony and her own at the trial. The exclusion of her testimony as to the third party's statement, therefore, if error, was harmless.

Error to a judgment of the Hustings Court, Part II, of the city of Richmond in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Bethel & Williams,* for the plaintiff in error.

*E. Randolph Williams* and *T. Justin Moore,* for the defendant in error.

KELLY, P., delivered the opinion of the court.

This is an action for personal injuries brought by Mrs. Lillie P. Ellis against the Virginia Railway and Power Company. The jury having found for the company, the court entered judgment accordingly, and Mrs. Ellis assigns error.

There are three counts in the declaration as amended

which may be briefly summarized as follows: First, that the plaintiff while a passenger for hire on one of the defendant's street cars "rang the bell to stop the car at Eighth and Main streets so as to alight therefrom, and that she proceeded to alight and get off said car when it had stopped at Eighth and Main streets; and that while she was in the act of alighting, and before she could get off of and clear of said car, and without fault on her part, the said defendant, through its servants, agents and employees, negligently carelessly, willfully, and unlawfully, suddenly and quickly, and without warning to the said plaintiff, started said car, whereby said plaintiff was shoved, thrown and knocked from said car, and struck by said car before she could get out of its way as it swung around the corner at Eighth and Main streets"; second, "that she rang the bell before reaching the corner and when said car reached said corner it was stopped for the purpose of enabling said plaintiff to get out of said car; that while the plaintiff was in the act of getting out of said car after said car had stopped and before she could alight therefrom on the pavement in safety the said motorman and conductor in charge of said car as the agents of said defendant, negligently and carelessly started said car ahead, thereby throwing the said plaintiff to the pavement without any negligence on her part"; third, "that she rang the bell before reaching said corner and when said car reached said corner it was stopped for the purpose of enabling said plaintiff to get out of the car; that after said plaintiff had stepped off of said car and before she had a reasonable time to get out of the way of said car, and after, by the use of ordinary care and caution, her peril could have been seen, and it was apparent that if the car was moved, that then it would strike her, the said motorman and conductor in charge of said car, as the agents of the defendant, negligently and carelessly started said car ahead and the rear of said car caught.

struck, pushed, shoved and knocked said plaintiff, without negligence on her part, and she was thereby thrown violently over, upon, to and against the ground, curbing and stones."

[1] The plaintiff herself testified that while she was in the act of alighting with one foot on the ground and her hand still holding to the car the motorman started rapidly forward, "jerked her loose," and she was struck by the moving car. If the jury had believed her statement, it would have been their duty to find in her favor and they doubtless would have done so, but there was abundant, not to say overwhelming, evidence to show that the car did not start until after she had alighted, and had walked several steps, amply far, if she had moved away and kept away from the overlap of the car as it turned the curve just ahead, to have made her perfectly safe. The burden was on her to prove either that she was not given time to alight, or that having alighted she was not given time to clear the car and reach a place of safety. The jury was entirely warranted in finding that the evidence was against her upon both of these theories of the case, and the judgment upon the verdict must be affirmed unless there was error in some of the other rulings of the court during the progress of the trial.

[2] The only serious question in the case, as we see it, is presented by plaintiff's bill of exceptions No. 1, which is as follows:

"Q. 'At the time that you next remember anything since the car struck you, from the time that the car struck you, did this man that picked you up make any statement to you?'

"The foregoing question propounded to Lillie P. Ellis, witness in her own behalf upon direct examination by the plaintiff, upon objection by the defendant, was disallowed by the court, and the plaintiff excepted; the answer to the question excepted would have been:

"A. 'The motorman came up and said 'It is not my fault' and the man who picked me up said 'It was your fault, you hardly gave me time to get out of the way, and I was in front of her.' "

Looking to other parts of the record, it appears that the plaintiff testified that after being knocked down by the car she did not know anything until she was picked up by a man whom she could describe, but whose name she did not know, and that she did not "come to" until "they" had moved her over to the sidewalk. In the meantime the motorman, who did not see the car strike her (because he was on the front and she was struck by the rear of the car), had again stopped the car on an emergency signal from the conductor, had discovered the trouble, and had gone back to offer his assistance. The interval between the accident and her recovery from an unconscious or dazed condition appears to have been very brief. It was long enough, however, for the conductor to see what had happened, to give an emergency signal, and for the motorman to stop the car, alight and hurry back to where the plaintiff was.

The question and answer which the court rejected were designed to place in evidence before the jury the statement of a third party to the motorman as follows: "It was your fault, you hardly gave me time to get out of the way, and I was in front of her."

It is insisted by counsel for the defendant that the alleged statement was a mere expression of opinion, but the question cannot be disposed of on that ground. This point might well be made as to the expression "It was your fault," but the residue of the statement, "you hardly gave me time to get out of the way, and I was in front of her," is a statement of fact which the declarant as a witness might properly have been allowed to make.

[3, 4] The real question, therefore, is whether the recital

by the plaintiff as a witness of the alleged statement of this third party or bystandar was admissible as a part of the *res gestae*. It might be according to eminently respectable authorities, including Professor Wigmore, more technically accurate to say that the question is whether the statement was admissible as a "spontaneous declaration" under an exception to the hearsay rule.

The practical rule as to the admissibility of such testimony, deduced and condensed from the decisions of the courts and the text books generally, seems to be that the declaration must have accompanied the main fact or must have followed under its immediate propulsion, must bear no evidence of reflection or deliberation or calculation, and must have been a spontaneous, undesigned and illustrative incident or part of the litigated act. "These" as this court said with respect to a similar question in the case of *Washington-Va. Ry. Co.* v. *Deahl*, 126 Va. 141, 147, 100 S. E. 840, 842, "are the tests of admissibility under the *res gestae* rule. The rule itself is incapable of any precise definition. Its application to a particular case depends upon the circumstances of that case, and necessarily rests at last in every instance upon the discretion and judgment of the trial court. Such discretion and judgment, of course, may be the subject of review, but in doubtful cases there ought to be and is a presumption in favor of the action of the court below."

Professor Wigmore, in the course of a very industrious examination and discussion of spontaneous declarations and of the decisions thereon, says: "Since the application of the principle thus depends entirely on the circumstances of each case, it is therefore impossible to regard rulings upon this limitation as having in strictness the force of precedents. To argue from one case to another on this question of 'time to devise or contrive' is to trifle with principle and to cumber the records with unnecessary and unprofitable

quibbles.   There is a lamentable waste of time by Supreme
Courts in here attempting either to create or to respect
precedents.   Instead of struggling weakly for the impos-
sible, they should decisively insist that every case be treated
upon its own circumstances.   They should, if they are able,
lift themselves sensibly to the even greater height of leav-
ing the application of the principle absolutely to the de-
termination of the trial court.   Until such a beneficent re-
sult is reached, their lucubrations over the details of each
case will continue to multiply the tedious reading of the
profession." 3 Wig. Ev., sec. 1750, p. 2257.

[5] While we are not prepared to go quite as far as Pro-
fessor Wigmore goes in reference to the finality which should
attach to the action of the trial court upon this question,
we have no disposition to recede from the position taken in
that regard in the *Deahl Case, supra.*   It must be conceded
that neither in the *Deahl Case* nor in the case at bar was
the question of the admissibility of the declaration free
from doubt, but in neither case is it manifest that the trial
court was wrong, and this situation brought about an affirm-
ance on that point in the *Deahl Case,* and should produce
a like result in this one.

There are, however, certain important differences be-
tween the character and setting of the declaration which the
court admitted in the *Deahl Case* and that which it ex-
cluded in the instant case.   In the former, it was the state-
ment of the motorman, one of the actors, whose train had
just crashed into a truck, and his exclamation was purely
spontaneous and uttered clearly under the spur and excite-
ment of the accident, and it was distinctly illustrative of
what he himself had done.   In the latter, the case at bar,
the declaration was that of a third party, not spontane-
ously uttered, not an incident of the accident itself nor
called forth by it, but a statement made subsequently by
a third party, and in reply to one made by the motorman.

[6] It is perhaps not material as bearing upon the action of the trial court at the time in excluding the declaration, because the fact about to be alluded to was not known either to the plaintiff or to the court until after the question and answer had been ruled out, but as a matter of fact the party whose alleged statement was sought to be introduced was present at the trial and testified fully. His testimony was in direct and irreconcilable conflict with the testimony of the plaintiff as to the time he had in which to get out of the way of the car. It is true he was not asked whether he made the alleged statement to the motorman, but it is perfectly apparent that he would have, if pressed upon the question, been obliged to say that he could not have truthfully made it. His testimony shows that he himself had practically reached the sidewalk some distance away from the car before the plaintiff was struck. He could not, therefore, have truthfully said to the motorman, "You hardly gave me time to get out of the way." The point here is that the jury passed upon a conflict of testimony between the plaintiff and the declarant, and necessarily, as shown by their verdict, believed the witness and disbelieved the plaintiff. If, therefore, she had been permitted to say that he made the declaration to the motorman, she would have been in no better position. The conflict between her and the witness would have still been the same, and as it is apparent that they believed him and not her, if it was error to exclude the statement, it was clearly harmless in the result.

The remaining assignments of error relate to the instructions. We have given the most careful consideration to these instructions and to the criticisms urged against them in the oral argument and in the briefs of the learned counsel for the plaintiff. There are no new questions involved, and we deem it sufficient to say that the instructions as a whole fairly and fully and clearly submitted the plaintiff's

theory to the jury, and that there was no error therein to the prejudice of the plaintiff.

For these reasons the judgment of the trial court must be affirmed.

*Affirmed.*