**Alexandria**

NATHANIEL JONES

v.

COMMONWEALTH OF VIRGINIA

No. 0789-88-4

Decided September 18, 1990

Counsel

Thomas J. Harrigan (Duvall, Harrigan, Hale & Downey on brief), for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (Mary Sue Terry, Attorney General on brief), for appellee.

Opinion

**COLEMAN, J.**—Nathaniel Jones was convicted of distributing cocaine, a Schedule II controlled substance, for which he was sentenced to seven years in the penitentiary and fined $500. A crucial piece of circumstantial evidence which was introduced to implicate Jones in the drug sale was a hearsay statement of Kay Gaskins, uttered when she was selling the cocaine to undercover officer Gordon Williams. Williams testified, over defense counsel's hearsay objection, that when he bought the drugs from Kay Gaskins, she told him that she would have given him a better price for the cocaine except for the presence of her boyfriend, Nathaniel Jones. Jones contends that this hearsay statement by Gaskins incriminated him as the source of the drugs and thereby implicated him in the sale. Jones argues that the hearsay statement was not admissible under any of the recognized exceptions to the hearsay rule. We agree. Since we are unable to say that the jury did not base its guilty verdict on the hearsay statement, we reverse and remand the case.

The Commonwealth contends that Officer Williams' testimony, in which he recited Kay Gaskins' statement to him, was admissible for any of several reasons: (1) for the limited purpose of establishing the credibility of undercover officer Williams after the defense had attempted to impeach him, (2) for its truth as a part of the *res gestae* during the drug transaction, (3) for the limited purpose of showing as a verbal fact that a transaction did occur, and (4) for its truth as the statement and admission of a co-conspirator.

 We view the evidence in the light most favorable to the Commonwealth and grant to it all the reasonable inferences fairly deducible therefrom. *Sutphin v. Commonwealth*, 1 Va. App. 241, 243, 337 S.E.2d 897, 898 (1985).

As part of an undercover drug operation, police officer Gordon Williams, posing as a drug buyer, attempted to associate with drug users so that they might unsuspectingly lead him to their drug suppliers. When successful, Williams would make controlled purchases from the suppliers as evidence for later drug distribution prosecutions. One such acquaintance, Taunya Cook, led Officer Williams to the apartment of Kay Gaskins, the person from whom he would make a controlled purchase of cocaine. Williams and Cook were accompanied by a third person identified only as "Saul."

When the three arrived at Gaskins' apartment, Nathaniel Jones came into the living room from one of two bedrooms in the back of the apartment and talked briefly with Saul. Jones then returned to the back of the apartment. Officer Williams, Kay Gaskins, Taunya Cook, and Saul sat at the living room table while Williams negotiated the purchase of one and one-half grams of cocaine from Gaskins for $150. Williams paid Gaskins the money and she "went to the back" of the apartment, from where she soon returned and handed Williams the cocaine. Williams testified that Gaskins then said: "If her boyfriend was not there, [Williams] would have gotten a better deal."

After a brief conversation with Gaskins, Williams, as a pretext to investigate the back of the apartment, asked to use the bathroom. On his way there, Williams noticed a door of one of the bedrooms was ajar, so he feigned difficulty with his trousers' zipper to provide himself an excuse for pausing at the bedroom door. He observed Nathaniel Jones, seated on the bedside at a small table, weighing an unidentified substance on a set of scales. Williams testified that, based on his experience as a narcotics officer, in his opinion Jones was packaging cocaine. After Williams left, a warrant to search the apartment was obtained; except for the cocaine which Williams had purchased from Gaskins, no other physical evidence was found.

Taunya Cook contradicted Officer Williams' testimony in two significant respects. She testified that Nathaniel Jones did not arrive at the apartment until after Gaskins had sold the cocaine to Williams, and she said that Williams never went to the bathroom or to the back of the apartment.

## I.

The trial court made three separate rulings during the course of the trial concerning the admissibility and use of the evidence that Gaskins allegedly told Williams he would have received a better price if her boyfriend had not been present. Initially, despite the Commonwealth's contention that the statement was admissible as that of a co-conspirator, the court ruled that the evidence was admissible as a verbal fact made during the course of the drug transaction. Presumably, the court was admitting the evidence to establish that a drug sale had occurred between Gaskins and Williams. However, the court did not instruct the jury to consider the statement for that limited purpose; likewise, the court did not instruct the jury not to consider it as a statement by Gaskins which implicated Jones. Later, out of the presence of the jury and in response to defense counsel's effort to obtain clarification of the court's earlier ruling, the judge informed counsel that the statement had been admitted only as to the credibility of the witnesses.

Certain portions of Williams' testimony had been challenged on cross-examination, using his testimony from the prior trial of Gaskins, namely his testimony concerning the chain of custody. Although Williams' testimony as to the statement made by Gaskins was never the subject of impeachment, the trial court commented that, because the defense had challenged Williams as to a portion of his testimony, the statement had been admitted as "a prior inconsistent statement." At the close of the evidence, the court admonished the jury:

> [I]t was stated that Kay Gaskins then indicated that had not Mr. Jones been present then Detective Williams would have received it at a cheaper price. You shall disregard that in its entirety. It shall not be a factor in your consideration. It only went to the question of credibility of the witness and none other.

Immediately after the admonition, the court instructed the jury on the law in the case.

The trial court's rulings and instructions were equivocal, confusing, and insufficient to advise the jury what consideration, if any, it was permitted to give to Kay Gaskins' alleged statement to Officer Williams. The admonishment "was not as direct, positive or comprehensive as it should have been." *Coffey v. Commonwealth*, 188 Va. 629, 637, 51 S.E.2d 215, 218 (1949). While we presume that juries follow a trial court's instruction to disregard evidence, *LeVasseur v. Commonwealth*, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983), *cert. denied*, 464 U.S. 1063 (1984), where, as here, the court's instructions are conflicting, we cannot hold that the jury divined what conclusions it could draw from the evidence. Here, the jury was given three separate directives, ranging from disregarding the evidence, or to considering it for purposes of credibility, to considering it without limitation. *See Stotler v. Commonwealth*, 2 Va. App. 481, 484-85, 346 S.E.2d 39, 41 (1986). Defense counsel repeatedly objected to the evidence as being inadmissible hearsay. Contrary to the Commonwealth's contention, it was unnecessary in order to preserve the issue for appeal under Rule 5A:18 for counsel again to object after the court gave its last admonition to the jury in response to defense counsel's objection and motion to strike the evidence.

The jury was initially permitted to consider the evidence without limitation. Later, it was told to disregard the statement but also told to consider it for credibility purposes, which ruling will be later discussed. The rulings were both erroneous in part and confusing. Therefore, we conclude that a manifest probability exists that the jury considered the statement by Kay Gaskins as tending to prove that Nathaniel Jones had provided her the cocaine which she sold to Williams from that which he was weighing and packaging. *See Coffey*, 188 Va. at 636, 51 S.E.2d at 218. Accordingly, we will address the Commonwealth's arguments that the statement was admissible for the truth of the matter asserted either as a declaration of a co-conspirator or a part of the *res gestae*.

## II.

### A. *Admission as the Declaration of a Co-Conspirator*

 The Commonwealth argues that Gaskins' declaration was admissible under the co-conspirator exception to the hearsay rule. We recently have reviewed the co-conspirator exception and the well-established requirement that "before the co-conspirator's hearsay declaration may be admitted, a *prima facie* case of conspiracy must be established by evidence independent of the declarations themselves." *Rabeiro v. Commonwealth*, 10 Va. App. 61, 63, 389 S.E.2d 731, 732 (1990)(citations omitted).

> The co-conspirator exception requires as a threshold to admissibility some assurance of the existence of a conspiracy independent of a conspirator's hearsay statements. Because of the risk that a co-conspirator may be making calculated statements to divert attention by implicating others for his or another's wrongdoing, and because the trier-of-fact typically will not have an opportunity to hear the declarant cross-examined, or view the declarant's demeanor or the evidence first hand, a co-conspirator's declarations, like hearsay statements generally, are inadmissible absent some indicia of reliability.

*Id.* at 63-64, 389 S.E.2d at 731-32.

 The relationship between Gaskins and Nathaniel Jones was described as that of paramours. The Commonwealth relies upon the testimony that Gaskins retrieved the drugs from the back of the apartment where Jones allegedly was packaging cocaine as independent proof of a conspiracy between them. The record shows no contact or discourse between Gaskins and Jones. There were two bedrooms at the back of the apartment. The record does not establish from where Gaskins retrieved the drugs which she sold Jones. These facts are not sufficient to support an inference or to make a *prima facie* showing that Gaskins and Jones agreed with one another to distribute drugs. Proof that two persons possessed drugs in the same dwelling, where one is observed packaging and another selling, is sufficient to establish that each possessed drugs with the intent to distribute, but absent any proof, direct or circumstantial, that the two were acting in concert, an agreement between them to distribute drugs cannot be inferred. *See Smith v.*

*Commonwealth,* 217 Va. 336, 337, 228 S.E.2d 562, 562-63 (1976); *Smith v. Commonwealth,* 185 Va. 800, 819-21, 40 S.E.2d 273, 282-83 (1946) (the conclusion to be drawn is speculative); *see also Brown v. Commonwealth,* 3 Va. App. 101, 107, 348 S.E.2d 408, 411 (1986) (a buy/sell agreement between individuals does not constitute a conspiracy between them to distribute); *Reed v. Commonwealth,* 213 Va. 593, 594-95, 194 S.E.2d 746, 747 (1973) (facilitation of a transaction by an individual does not, standing alone, constitute conspiracy). We hold that circumstances were insufficient to establish by a preponderance of the evidence that an agreement existed between Gaskins and Jones to distribute drugs. Therefore, Gaskins' declaration was not admissible as a statement by a co-conspirator in furtherance of a conspiracy.

## B. *Res Gestae*

■ The Commonwealth also argues that the declaration was admissible to prove that Nathaniel Jones acted as a principal in the drug sale by Gaskins under the *res gestae* exception to the hearsay rule. For a hearsay declaration to come within the *res gestae* exception, the declaration "must accompany and explain an act done, which is a fact in issue or is relevant to the issue." *Scott & Boyd v. Shelor,* 69 Va. (28 Gratt.) 891, 896 (1877). "Facts which constitute the *res gestae* must be such, as are so connected with the very transaction or fact under investigation as to constitute a part of it." *Haynes v. Commonwealth,* 69 Va. (28 Gratt.) 942, 946 (1877).

■ As the hearsay rule and its exceptions have developed, the strict limitations placed upon the admission of declarations as part of the *res gestae* were relaxed in instances where the reliability of the statement was clear, even though the relevance or connection of the utterance to prove the transaction or fact involved was more attenuated. *See McReynolds v. Commonwealth,* 177 Va. 933, 941, 15 S.E.2d 70, 73 (1941). As a result, the *"res gestae* exception" has become a collective reference to a number of separately identifiable exceptions,[1] the common denominator of which is that the declarant uttered the statement spontaneously and without

[1] Excited utterances. *E.g., Pugh v. Commonwealth,* 223 Va. 663, 669, 292 S.E.2d 339, 342 (1982). Present sense impressions. *E.g., Foley v. Commonwealth,* 8 Va. App. 149, 161, 379 S.E.2d 915, 921-22 (1989). *See especially Jordan v. Commonwealth,* 66 Va. (25

deliberation.

Consequently, the *res gestae* exception was used to allow into evidence clearly relevant declarations that accompanied the litigated act, 6 J. Wigmore, *Evidence* § 1768 (Chadbourne rev. 1976), but often without clearly identifying the specific basis upon which the exception was made. *See, e.g., Goins v. Commonwealth*, 218 Va. 285, 287, 237 S.E.2d 136, 138 (1977); *McIlwain v. McIlwain*, 215 Va. 633, 636, 212 S.E.2d 284, 286 (1975). However, with the continued refinement of the hearsay rule and its exceptions, courts began to identify and define with precision the particular basis for the *"res gestae* doctrine." *E.g., Arnold v. Commonwealth*, 4 Va. App. 275, 281-82, 356 S.E.2d 847, 851 (1987).

█ Here, we consider whether the declaration made by Gaskins is admissible under the *res gestae* exception as a statement accompanying an act which is a fact in issue. *See Scott & Boyd*, 69 Va (28 Gratt.) at 896; *Foley v. Commonwealth*, 8 Va. App. 149, 161, 379 S.E.2d 915, 921-22 (1989)(defining and discussing the present sense impression "sub-rule" of the original *res gestae* exception); *see also Arnold*, 4 Va. App. at 282, 356 S.E.2d at 851 (question of the application of a *res gestae* exception not reached because narration was deliberate, not spontaneous). In order for a hearsay declaration to be admissible as a statement accompanying an act, the declaration must be (1) spontaneous, (2) contemporaneous with the litigated act, and (3) it must explain the act. These three requirements address concerns of truthfulness, accuracy, and relevancy that must be satisfied before any hearsay statement may be admitted. For a statement accompanying a litigated act to be admissible as a part of the *res gestae* it must:

> possess at least the following essential elements: (1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked

Gratt.) 943 (1874) (monographic note outlining numerous *res gestae* exceptions, some of which have since become independently recognized exceptions to the hearsay rule).

by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation; and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made.

*Chappell v. White*, 182 Va. 625, 633-34, 29 S.E.2d 858, 861-62 (1944)(quoting *Beck v. Dye*, 200 Wash. 1, ____, 92 P.2d 1113, 1117 (1939)). Consideration of these elements and other possibly relevant factors is necessary to determine whether the three requirements for the admission of the declaration made as a part of the *res gestae* have been met.

 "The spontaneity of the [declaration] is the guaranty of its trustworthiness in substitution of that provided by oath and cross-examination." *Chappell*, 182 Va. at 633, 29 S.E.2d at 861. "*Res gestae* are events speaking for themselves through the instinctive words and acts of the participants — not the words and acts of participants when narrating the events. What is done or said by the participants under immediate spur of a transaction becomes thus part of the transaction, because it is then the transaction that thus speaks." *McReynolds*, 177 Va. at 941, 15 S.E.2d at 73 (quoting *McCann v. Commonwealth*, 174 Va. 429, 439, 4 S.E.2d 768, 771 (1939)). To ensure that the declaration is indeed instinctive and not narrative and thus possibly contrived, *Upton v. Commonwealth*, 172 Va. 654, 657, 2 S.E.2d 337, 339 (1939), the spontaneity requirement demands that "[t]he declaration must be made at such time and under such circumstances as to preclude the presumption that it is the result of deliberation." *Nicholaou v. Harrington*, 217 Va. 618, 622, 231 S.E.2d 318, 322 (1977); *see Sutton v. Sutton*, 194 Va. 179, 188, 72 S.E.2d 275, 280 (1952). Where the credible evidence for and against this presumption is fairly balanced, the presumption of deliberation and narration is not rebutted. *See Lambert v. Lambert*, 6 Va. App. 94, 101, 367 S.E.2d 184, 188 (1988); *compare Doe v. Thomas*, 227 Va. 466, 472-73, 318 S.E.2d 382, 386 (1984), and *Ellis v. Virginia Ry. & Power Co.*, 132 Va. 24, 30, 110 S.E. 382, 384 (1922), *with Wash-*

*ington-Virginia Ry. v. Deahl*, 126 Va. 141, 147, 100 S.E. 840, 842 (1919).

 Although a number of factors may be relevant under the circumstances to rebut the presumption of deliberation, the lapse of time, although not controlling, is highly relevant to the determination whether the declaration was spontaneous and instinctive or premeditated and deliberate. *Doe*, 227 Va. at 471, 318 S.E.2d at 385; *see Upton*, 172 Va. at 657-58, 2 S.E.2d at 339 (discussing the importance of time). Another significant factor is whether the declaration is a statement of fact or an expression of opinion. *Chappell*, 182 Va. at 634, 29 S.E.2d at 862; *see Ellis*, 132 Va. at 28, 110 S.E. at 383 (dissecting a statement into its fact and opinion segments). Also of significance is whether the declaration when made was against interest or was self-serving. *Doe*, 227 Va. at 472, 318 S.E.2d at 385 (citing *Zeller v. Dahl*, 262 Or. 515, 519, 499 P.2d 1316, 1318 (1972)).

 The requirement of contemporaneity, like spontaneity, gives additional assurance of trustworthiness by reducing the chance for premeditation or deliberation. "Statements by a participant in a transaction are admissible as part of the *res gestae*, if spontaneous *and* made while under the influence of the transaction itself." *State v. Coram*, 116 W. Va. 492, 492, 182 S.E. 83, 83 (1935)(emphasis added). However, contemporaneity is an indication of reliability separate and distinct from spontaneity.

 The contemporaneity requirement guarantees trustworthiness by ensuring that the spontaneous declaration is uttered under the spur of *this* event or litigated act and not some other analogous or proximate event. *See Foley*, 8 Va. App. at 161-62, 379 S.E.2d at 921-22; *see, e.g., Pepoon v. Commonwealth*, 192 Va. 804, 809-10, 66 S.E.2d 854, 857 (1951)(declaration evoked by similar transaction or occurrence is not a declaration made under such circumstances as to exclude presumption of deliberation). However, even if the declaration is found to be contemporaneous with the litigated act, the degree of "[r]emoteness is a factor to be weighed in determining the indicia of reliability to be accorded hearsay statements and in balancing the probative value of a statement against its prejudicial effect." *Evans-Smith v. Commonwealth*, 5 Va. App. 188, 199, 361 S.E.2d 436, 442 (1987) (citations omitted). The contemporaneity requirement also avoids the problem of memory recall associated with the lapse of time, thus

making cross-examination and third party verification regarding the event and declaration feasible. *Foley*, 8 Va. App. at 161-62, 379 S.E.2d at 921-22.

Regardless of the degree of spontaneity or contemporaneity of a declaration, to be admissible as a statement accompanying an act and a part of the *res gestae*, the declaration must be relevant in that it "must relate to the main event and must explain, elucidate, or in some way characterize that event." *Chappell*, 182 Va. at 633, 29 S.E.2d at 862; *Scott & Boyd*, 69 Va. (28 Gratt.) at 896. Declarations that merely accompany an event or litigated act, but which do not relate to it, are not so connected to it as to constitute a part of the *res gestae. Haynes*, 69 Va. (28 Gratt.) at 946. The declaration must be the facts *of the event in question* voicing themselves through the participants or observers. *Upton*, 172 Va. at 657-58, 2 S.E.2d at 339.

The test of the relationship between the declaration and the event is one of causation, whereby the declaration is made "under the spur" of the event, *McReynolds*, 177 Va. at 941, 15 S.E.2d at 73; neither the length nor shortness of time or distance is conclusive. *Upton*, 172 Va. at 657, 2 S.E.2d at 339. Even though an event may be protracted with the declaration being made at a later time, if there are sufficient connecting circumstances, the declaration may still form part of the event. *Cluverius v. Commonwealth*, 81 Va. 787, 805 (1886). A statement is admissible if uttered spontaneously and contemporaneously while then and there under the influence of the event or litigated act.

In each case, whether the exception applies is dependent upon the particular circumstances. Thus, on appeal, the trial court's ruling will be accorded considerable deference. *Harris v. Commonwealth*, 8 Va. App. 424, 430, 382 S.E.2d 292, 295 (1989); *McReynolds*, 177 Va. at 941-42, 15 S.E.2d at 73; *see also Ellis*, 132 Va. at 29, 110 S.E. at 384. We hold that the hearsay declaration of Gaskins that "if her boyfriend were not present, Williams would have gotten a better deal on his cocaine," was not admissible as a statement accompanying the act of sale. The uncontradicted testimony established that Gaskins negotiated and finalized the pricing of the cocaine and that she pocketed the payment for it. The statement itself evinces deliberation. At a minimum, it does not overcome the presumption that it was deliberative. Therefore, the statement was not admissible under the *res gestae*

exception of the hearsay rule.

■ The party seeking to have hearsay declarations "admitted as an exception to the general rule must clearly show that they are within the exception." *Doe*, 227 Va. at 472, 318 S.E.2d at 386; *see also Atlantic Coast Realty Co. v. Robertson's Ex'r*, 135 Va. 247, 254, 116 S.E. 476, 478 (1923) (where an adverse presumption is to be overcome, the degree of proof required is "clear," or similarly conclusive, proof). Regardless of whether the statement was made contemporaneously with the drug sale and was relevant to its completion, a statement that was not made spontaneously' is not inadmissible.

Since the statement was not admissible and may have been the basis upon which the jury based its determination that Jones was a principal in the drug transaction, we reverse and remand the case for retrial.

*Reversed and remanded.*

Duff, J., and Keenan, J., concurred.