COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Frank and Clements
Argued at Alexandria, Virginia


JOEL R. JONES
                                              OPINION BY
v.    Record No. 0009-01-4            JUDGE ROBERT P. FRANK
                                               MAY 14, 2002
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                       David T. Stitt, Judge

          Daniel T. Lopez, Senior Assistant Public Defender
          (Office of the Public Defender, on brief), for
          appellant.

          Susan M. Harris, Assistant Attorney General
          (Randolph A. Beales, Attorney General,
          on brief), for appellee.


     Joel R. Jones (appellant) was convicted in a jury trial of

three counts of embezzlement in violation of Code § 18.2-111.

On appeal, he contends the trial court erred (1) in admitting

hearsay evidence under the "business record exception" because

the entry was not made contemporaneously with the event; and

(2) in admitting this same material because it was "unduly

prejudicial."  For the reasons stated, we affirm the judgment of

the trial court.

                        I.   BACKGROUND

     Appellant worked as a delivery man for Airborne Express.

As part of his duties, appellant was responsible for the

delivery of three separate shipments of American Express

traveler's checks that were diverted and did not reach their intended destination.

At trial, the Commonwealth, in order to trace the traveler's checks from their point of origin through the shipping process, called Pat Crosetti, Director of the American Express Traveler's Check Distribution Center in Piscataway, New Jersey. She had worked in that capacity for eight years and had been with American Express for a total of twenty-five years.

Crosetti supervised a staff of about fifty employees who "process[], pick[], and pack[] orders for shipments of traveler's checks that go to banks and credit unions." Her staff retrieves the checks from the vault, fills the order, packages the checks into shipping cartons, and then "hand[s] them off to Airborne [Express], who distributes them the last leg of the journey to the physical locations."

The "order-taking unit," in Salt Lake City, is separate from Crosetti's "order filling" unit. The order-taking unit generates a "trust receipt," which functions as the "packaging inventory." The trust receipt is assigned a unique number. The trust receipts indicate the requested denominations of the checks, the quantity of each denomination, and the specific series of check numbers assigned to each denomination. Those specific check numbers are not used again for any other order.

The trust receipt is sent electronically overnight to the New Jersey facility and is downloaded and printed for

processing.  The printed trust receipt arrives at the assembly line that same morning.  The order is filled using a method called "pick-and-pass," in which five people work together to fill the order.  With the trust receipt in hand, the first picker stands alongside a long table and picks the $20 checks as required by the trust receipt.  The first picker then passes the trust receipt to the next picker who selects $50 checks and then passes the checks and the trust receipt to a third picker, who is responsible for another denomination.  A picker's "job is to look at the [] checks" and to "marry them up with the order."

At the end of the line stands a "verifier."  The verifier will "physically pick up the checks and then they would look at the packing slip, the trust receipt, and verify that it is, in fact, accurate."  The verifier then puts the checks into brown boxes provided by Airborne Express.  The brown boxes are placed in a "big blue bag," marked with the ultimate destination.

The bag "stays open until we're done with the work for the day, and then we seal up each blue bag."  Each bag is sealed with a "red bag tie" that can only be opened with a wire cutter.  Two copies of the trust receipt are placed inside the Airborne boxes with the traveler's checks, one "for the customer to keep for their records, and the second one [] to sign and return [to] American Express."

Airborne assigns each American Express order a specific "air bill number."  Each blue bag also has an air bill number of

its own. The air bill number is not printed on the trust receipt. Like the trust receipt number, this air bill number is a "unique number." At the end of the day, the "blue bags" are loaded into the Airborne containers. Each container is then sealed to avoid tampering or theft during transit.

Around 7:00 p.m. each night, Airborne dispatches a truck to American Express. The blue bags, sealed with red tags and packaged in Airborne containers, are loaded into the "Airborne tractor trailer" that "go[es] in the belly of the plane." The tractor trailer then is padlocked, and a seal is placed through the padlock.

Three traveler's checks shipments, dated August 3, 1999, September 1, 1999, and September 22, 1999, did not reach their "final destination customer." Crosetti testified that American Express had "accessed what we call the tracking on the package to determine if someone signed," and "our research showed us they had, in fact, signed." The August 3, 1999 package, containing $3,350 in traveler's checks destined for the Fairfax County Credit Union, was "signed by a name that was not an employee with them" and was signed before the credit union's mailroom opened.

The two September packages were destined for a branch of Crestar Bank in Fairfax, Virginia. "T. Bell," who signed for one of the September packages, was not an employee of the bank. "D. Nester" signed for the other September package at the exact

same time that Joyce Tinder signed for a different package. Tinder, who was an employee of an unrelated business, testified she never "sign[ed] for and receive[d] a package that was addressed to Crestar Bank."  The two September packages contained checks worth $20,375 and $13,950, respectively.

Crosetti testified as to the contents of the three packages from the information contained in the three relevant trust receipts.  Appellant objected to her testimony and to the introduction of Commonwealth's exhibits 1A, 2A and 3A,[1] the trust receipts for each of the missing shipments, on the ground that the exhibits only show what was ordered, not what was shipped. The objection was limited to the evidence's admissibility as proof that the items were shipped.  The trial court overruled the objections.

A total of 1,171 of the missing American Express checks were cashed, mostly in Baltimore, Maryland.  All these check numbers matched the numbers on the trust receipts for the three packages.

Fairfax Police Detective John Gordon interviewed appellant. Appellant admitted he was the driver for all three shipments

---

[1] These exhibits were computer-generated copies of the trust receipts.  American Express ships both hard copies to the customer.  The customer retains one copy and mails the other back to American Express, acknowledging receipt.  However, American Express never received the hard copies from these shipments.  Appellant does not question the use of these computer-generated copies.  See Lee v. Commonwealth, 28 Va. App. 571, 577, 507 S.E.2d 629, 632 (1998).

from American Express, but "stated that he had made all those deliveries as he was supposed to."  He denied taking any of the packages.

## II.  ANALYSIS

### A.  Business Record Exception[2]

Appellant argues on appeal that the trust receipts were not made contemporaneously with the events which they describe; therefore, he contends the trial court should have sustained his hearsay objection to the introduction of the trust receipts.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988).  "On factual issues relating to the admissibility of evidence, the burden of persuasion is proof by a preponderance of the evidence."  Rabeiro v. Commonwealth, 10 Va. App. 61, 64-65, 389 S.E.2d 731, 733 (1990).  The party seeking to have hearsay declarations admitted "'must clearly show'" that the evidence falls within an exception to the rule excluding hearsay.  Doe v. Thomas, 227 Va. 466, 472, 318 S.E.2d 382, 386 (1984) (quoting Skillern & Sons, Inc. v. Rosen, 359 S.W.2d 298,

---

[2] Our analysis assumes, without deciding, the trust receipts were hearsay when offered to prove the traveler's checks were shipped.  The Commonwealth in brief and at oral argument conceded that point.

301 (Tex. 1962)).  See also Atlantic Coast Realty Co. v. Robertson's Ex'r, 135 Va. 247, 254, 116 S.E. 476, 478 (1923).

The trial court admitted the trust receipts under the business records exception to the general rule excluding hearsay evidence.  Virginia has adopted this exception, which "allows introduction 'into evidence of verified regular [business] entries without requiring proof from the original observers or record keepers.'"  Sparks v. Commonwealth, 24 Va. App. 279, 282, 482 S.E.2d 69, 70 (1997) (quoting Neeley v. Johnson, 215 Va. 565, 571, 211 S.E.2d 100, 106 (1975)).

The party seeking to introduce evidence under this exception must lay a foundation before such evidence can be admitted.  As explained in Sparks:

> If the records are kept in the normal course of business and are relied upon in the transaction of the business by the entity for which they are kept, then they have a certain guarantee of trustworthiness and reliability.  "Automatic" Sprinkler Corp. v. Coley & Petersen, Inc., 219 Va. 781, 792, 250 S.E.2d 765, 773 (1979); Hooker v. Commonwealth, 14 Va. App. 454, 456, 418 S.E.2d 343, 344 (1992).  "Admission of such evidence is conditioned, therefore, on proof that the document comes from the proper custodian and that it is a record kept in the ordinary course of business made contemporaneously with the event by persons having the duty to keep a true record." "Automatic" Sprinkler, 219 Va. at 793, 250 S.E.2d at 773; see also Kettler & Scott, Inc. v. Earth Tech. Cos., 248 Va. 450, 457, 449 S.E.2d 782, 786 (1994).

Id. at 282, 482 S.E.2d at 70-71.

Appellant does not contest that American Express relied upon the trust receipts in the normal course of business nor does appellant contest Ms. Crosetti's status to authenticate the records. Appellant instead argues the documents were not created contemporaneously with the packaging of the checks, but instead were created before the packaging began. Therefore, according to appellant, the trust receipts are not admissible for the purpose of proving the checks were in the missing packages.

To determine the scope of "contemporaneous" in a "shopbook rule" context, we must look to the rationale for this exception. Generally, "the principal rationale underlying the hearsay rule [is the questionable] . . . reliability" of such evidence. King v. Commonwealth, 18 Va. App. 57, 59, 441 S.E.2d 704, 705 (1994). Therefore, any exception to this rule must be based on a finding that the hearsay is reliable.

> The trustworthiness or reliability of the [business] records is guaranteed by the regularity of their preparation and the fact that the records are relied upon in the transaction of business by the person or entities for which they are kept. See Laughlin, Business Entries and the Like, 46 Iowa L. Rev. 276, 276-77, 298 (1961).

"Automatic" Sprinkler, 219 Va. at 793, 250 S.E.2d at 773. See also Lee v. Commonwealth, 28 Va. App. 571, 576, 507 S.E.2d 629, 632 (1998) ("Business records are admitted as an exception to

the hearsay rule because they have a guarantee of trustworthiness and reliability.").

"Contemporaneous" is defined as "existing or occurring during the same time."  Webster's Third New International Dictionary 491 (1993).  However, we do not look at contemporaneousness in the abstract.  As this Court has said in a similar context, "[i]n each case, whether the exception applies is dependent upon the particular circumstances."  Jones v. Commonwealth, 11 Va. App. 75, 87, 396 S.E.2d 844, 851 (1990) (discussing "contemporaneity" as an element of the spontaneous declaration exception).

In Simpson v. Commonwealth, 227 Va. 557, 566-67, 318 S.E.2d 386, 392 (1984), the Supreme Court approved the admissibility of taxi meter recordings under the business records exception to prove the amount of money a robbery/murder victim had in his possession at the time of the crime.  A bookkeeper testified "to contemporaneous recordings of the meter readings . . . taken in the ordinary course of business at the beginning and at the end of the day of the crime."  Id.  The Supreme Court found these entries were "contemporaneously made" and admissible as circumstantial evidence of the amount of money in the victim's possession at the time of the robbery.  Id. at 567, 318 S.E.2d at 392.

Contemporaneousness is an indicia of reliability.  "The contemporaneity requirement . . . avoids the problem of memory

recall associated with the lapse of time, thus making cross-examination and third party verification regarding the event and declaration feasible."  Jones, 11 Va. App. at 86-87, 396 S.E.2d at 850.  See also Foley v. Commonwealth, 8 Va. App. 149, 161-62, 379 S.E.2d 915, 922 ("'"The requirement of contemporaneousness, or near contemporaneousness, reduces the chance of premeditated prevarication or loss of memory."'" (quoting Booth v. State, 306 Md. 303, 323, 508 A.2d 976, 980 (1986) (quoting D. Binder, Hearsay Handbook 89 (2d ed. 1983, Cum. Supp. 1985)))), aff'd on other grounds en banc, 9 Va. App. 175, 384 S.E.2d 813 (1989).  Thus, while in Simpson the length of time between the initial meter reading and the final reading after the taxi was recovered by the police was unknown, the trustworthiness of the data was clear.

Here, the trust receipts were employed to fill orders and the "verifier" used the trust receipts to insure the orders were accurately filled, packaged, and shipped.  The receipts were offered into evidence to prove the checks were in fact shipped. The reliability and trustworthiness of the trust receipts were insured by the fact that the employees who filled the orders and the "verifier" who checked the shipment contemporaneously relied upon the trust receipts.  The fact that the trust receipts were generated perhaps as much as a day prior to their use in the filling and shipping of the orders does not diminish the trustworthiness of the entries as proof of the shipments'

contents.  In the context of this case, it is irrelevant whether the trust receipts accurately reflected the order, i.e., whether the information recited in the trust receipts correctly listed the orders from the financial institutions.  The only issue is whether the items shipped were in fact the items listed in the trust receipts.  The receipts were offered to prove that the listed checks were packaged and shipped pursuant to those trust receipts.[3]  Given Crosetti's testimony, these records are reliable evidence and were properly admitted by the trial court.

### B.  Undue Prejudice

Appellant also argues the trust receipts should have been excluded as they were "unduly prejudicial."  However, the cases he cites refer to issues of relevance or sufficiency that are not before this Court.[4]

The trust receipts were relevant to this case.  The testimony proved these documents contained information about the packaging and shipping of the stolen traveler's checks.

---

[3] We do not suggest that a twenty-four-hour delay in the creation of a business document always meets the contemporaneous requirement.  The facts of the individual case control.  See Simpson, 227 Va. at 567, 318 S.E.2d at 392.

[4] Appellant may be arguing that the "error" was not harmless when the trial court allowed the evidence to come in under the business record exception.  See generally Lavinder v. Commonwealth, 12 Va. App. 1003, 407 S.E.2d 910 (1991) (en banc) (discussing the harmless error test in the context of a trial court's error in allowing the jury to consider inadmissible evidence).  As we find no error, a harmless error analysis is not necessary here.

Crosetti testified regarding the regular business practices followed by American Express to prepare the checks for shipping using the trust receipts and for verification of receipt of those shipments. Lawrence Drayton testified regarding the procedures used by Airborne Express to deliver the shipments. Appellant told the police he "delivered" the shipments containing the checks to the credit union and the bank. However, other testimony proved those deliveries were not made.

The trust receipts were no more "unduly prejudicial" than any evidence presented by the Commonwealth to prosecute a defendant. See Lee, 28 Va. App. at 577-79, 507 S.E.2d at 632-33. The evidence was admissible under Virginia's rules of evidence, and, therefore, the trial court did not unduly prejudice appellant by allowing the jury to consider the trust receipts.

For the reasons stated above, we affirm appellant's convictions.

Affirmed.