COURT OF APPEALS OF VIRGINIA


Present: Judges Frank, Clements and Senior Judge Willis


HARDEES OF NORTON NO. 2849 AND
 BODDIE-NOELL ENTERPRISES, INC.
                                    MEMORANDUM OPINION*
v.    Record No. 1109-02-3              PER CURIAM
                                     SEPTEMBER 17, 2002
LENA MARIE STEPHENS


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            (Monica Taylor Monday; Mary Beth Nash;
            Gentry Locke Rakes & Moore, on brief), for
            appellants.

            (D. Allison Mullins; Lee & Phipps, P.C., on
            brief), for appellee.


     Hardees of Norton No. 2849 and Boddie-Noell Enterprises,

Inc. (employer) contend the Workers' Compensation Commission

erred in finding that Lena Marie Stephens (claimant) proved by

clear and convincing evidence that her right carpal tunnel

syndrome was causally related to her employment.[1]  Upon reviewing

the record and the parties' briefs, we conclude that this appeal

is without merit.  Accordingly, we summarily affirm the

commission's decision.  Rule 5A:27.

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

     [1] Claimant did not appeal the commission's finding that she
failed to prove that her left carpal tunnel syndrome was caused
by her employment.  Accordingly, we will not address that issue
on appeal.

On appeal, we view the evidence in the light most favorable to the prevailing party below. R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

So viewed, the evidence proved that claimant began to work for employer as a biscuit maker on October 23, 2000. She hand-prepared seven batches of dough, which made about three dozen rolls and biscuits per batch. She was required to pour the dough into a large bowl and mix it by hand, then put it on a table and roll it and cut it. She made dough for about one hour and forty-five minutes to two hours during each six to eight-hour shift. After three to four weeks of performing her job, claimant began to have bilateral arm swelling and numbness. Her left arm had bothered her before beginning work for employer, but she had no problems with her right arm before her employment.

Jimmy Stidham, employer's manager, confirmed that claimant made dough for approximately one to two and one-half hours each shift. She also operated a cash register, waited on customers, cleaned the dining room, and stocked items. Within a few weeks of starting work, claimant told Stidham that her doctor told her to stop making biscuits because of something in her back. As a result, he reassigned her to work as a full-time cashier.

On November 10, 2000, claimant complained to Dr. Neal A. Jewell, an orthopedic surgeon, that she suffered from back pain, lower extremity pain, and a "recent onset of swelling in her

- 2 -

hands, numbness in her hands at night." She told Dr. Jewell that she started working for employer on October 23, 2000 and that she made biscuit dough. She told him how she kneaded and cut the dough. Dr. Jewell diagnosed possible early carpal tunnel syndrome. He recommended that claimant stop the biscuit-making job duties because her symptoms seemed to improve with rest. Dr. Jewell noted that the symptoms started "almost immediately following the beginning of the work activities."

On December 4, 2000, claimant continued to complain to Dr. Jewell of "carpal tunnel type of symptoms with intermittent numbness in both hands, increased after work and increased at night." Dr. Jewell diagnosed cervical spondylosis, bilateral carpal tunnel syndrome, and chronic lumbar pain. He told claimant to stop her job "since it is chronically aggravating her carpal tunnel symptoms."

In a December 6, 2000 letter, Dr. Jewell opined that claimant should stop her food preparation duties at work because "[c]onstant kneading of the dough and other biscuit making activities have, from the outset of her employment at Hardee's, caused these carpal tunnel symptoms."

On January 4, 2001, claimant told Dr. Jewell she had not been working for the past two weeks and that her symptoms, other than right index finger numbness, seemed to be resolving. On February 15, 2001, Dr. Jewell noted that claimant's "right carpal tunnel symptoms are unchanged [with] . . . persistent

numbness and pain in the median nerve distribution [and] . . . diffuse hand pain and intermittent swelling in the hand." Dr. Jewell diagnosed right carpal tunnel syndrome secondary to claimant's work duties beginning on October 23, 2001 and "longstanding" left carpal tunnel syndrome. Bilateral nerve conduction studies done on February 20, 2001 revealed "compression of the median nerves at the wrist as in carpal tunnel syndrome."

On March 8, 2001, Dr. Jewell opined that claimant's "right carpal tunnel symptoms are related to the job activities at Hardee's." Dr. Jewell noted that the left carpal tunnel symptoms were not related to the employment due to claimant's pre-existing positive nerve conduction studies on the left.

Dr. Richard Blume, an occupational medicine specialist, reviewed claimant's medical records for employer. On June 7, 2001, Dr. Blume opined that the medical findings failed to document the presence of carpal tunnel syndrome in either upper extremity. He concluded that claimant's complaints did not support a diagnosis of carpal tunnel syndrome and that her work history did not suggest a risk of carpal tunnel syndrome. He emphasized that claimant's symptoms could indicate fibromyalgia and noted that she was a twenty-year cigarette smoker.

Carpal tunnel syndrome, an ordinary disease of life under Code § 65.2-401, is compensable, if a claimant proves

- 4 -

by "clear and convincing evidence, (not a mere probability)," that the disease (1) "arose out of and in the course of [her] employment as provided in Code § 65.2-400 . . . "; (2) "did not result from causes outside of the employment"; and (3) "follows as an incident of occupational disease . . . [;] is an infectious or contagious disease contracted in the course of [specified types of employment]; or . . . is characteristic of the employment and was caused by conditions peculiar to such employment." . . . [A] disease arises out of the employment "if there is [inter alia,] . . . [a] direct causal connection between the conditions under which work is performed and the occupational disease; . . . [and] [i]t can be fairly traced to the employment as the proximate cause . . . ."

\*     \*     \*     \*     \*     \*     \*

The commission's determination regarding causation is a finding of fact. A finding of causation need not be based exclusively on medical evidence. . . .

In determining whether credible evidence exists to support the commission's findings of fact, "the appellate court does not retry the facts, reweigh . . . the evidence, or make its own determination of the credibility of the witnesses." Thus, unless we can say as a matter of law that claimant failed to sustain her burden of proving causation, the commission's findings are binding and conclusive upon us.

Lee County Sch. Bd. v. Miller, 38 Va. App. 253, 259-61, 563 S.E.2d 364, 377-78 (2002) (citations omitted).

Claimant's testimony and Dr. Jewell's medical records and opinions constitute credible evidence to support the commission's finding that claimant proved by clear and convincing evidence that her right carpal tunnel syndrome was

caused by her employment. Dr. Jewell, who was aware of claimant's job duties and the fact that her symptoms began shortly after she started working for employer, opined that her job activities caused her right carpal tunnel symptoms and that her right carpal tunnel symptoms were related to her job activities. As fact finder, the commission was entitled to accept Dr. Jewell's unequivocal opinion and to reject Dr. Blume's contrary opinion. Dr. Blume reviewed medical records at employer's request. However, unlike Dr. Jewell, Dr. Blume never examined claimant nor did he treat her over an extended period of time.

Furthermore, credible evidence supports the commission's finding that claimant met her burden of proving her right carpal tunnel syndrome did not result from causes outside her employment. Claimant testified that she started having problems with her right arm within several weeks after she began working for employer. When she first saw Dr. Jewell, she described her biscuit-making duties to him. Dr. Jewell's medical records and opinions, coupled with claimant's testimony, provided clear and convincing evidence that claimant's right carpal tunnel syndrome resulted from the activities required by her job making biscuits for employer rather than any other medical condition or her twenty-year history of smoking cigarettes. As the commission noted,

> Dr. Jewell repeatedly advised that the right carpal tunnel syndrome was caused by [claimant's] employment. While employer referred to potential causes of the claimant's carpal tunnel syndrome, such as an existing neck condition or her smoking habit, these possibilities do not mean that there were causes outside of the employment. The claimant also showed that the condition was peculiar to her duties of making the dough. She suffered symptoms soon after she began these industrial activities and Dr. Jewell documented these complaints. The . . . Act does not require that the claimant perform the work activity continuously for an eight-hour shift or for several months to be a compensable ordinary disease of life.

Based upon this record, we cannot find as a matter of law that claimant's evidence failed to sustain her burden of proving by clear and convincing evidence that her right carpal tunnel syndrome was causally related to her employment and did not result from causes outside of her employment. Accordingly, we affirm the commission's decision.

Affirmed.