**Richmond**

CLINTON PETE HODGE

v.

COMMONWEALTH OF VIRGINIA

BOBBY DEAN HODGE

a/k/a ROBBY DEAN HODGE

v.

COMMONWEALTH OF VIRGINIA

No. 0827-86-2

Decided November 15, 1988

352

COUNSEL

Benjamin H. Woodbridge, Jr. (Woodbridge & Reamy on brief), for appellants

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, W. Mark Dunn, Assistant Attorney General, on brief), for appellee.

OPINION

**BENTON, J.** — Clinton Pete Hodge and his son, Bobby Dean Hodge, a/k/a Robby Dean Hodge, were jointly tried and convicted by a jury of conspiracy "to sell, give, or distribute cocaine" in violation of Code §§ 18.2-248 and 18.2-256. They were each sentenced to forty years in the state penitentiary with twenty years suspended and fined $25,000. In this consolidated appeal the

Hodges present identical arguments that their convictions should be overturned because (1) the Commonwealth's evidence was insufficient to establish that a conspiracy existed, and (2) the trial court erred in allowing into evidence the cocaine seized from their motel room. A third issue concerning ineffective representation by trial counsel is conceded by counsel to be moot as a result of a habeas corpus proceeding conducted post-trial.

Evidence presented at the trial established that an informant, identified only as Wendy, gave Virginia State Police Officer Michael E. Horst a telephone number and told Horst that he could arrange a drug transaction with Clinton Pete Hodge. Identifying himself as Jerry, Horst contacted Hodge by telephone at his North Carolina residence and recorded the entire conversation. During the conversation, Hodge asked Horst if he would be interested in "two or three squares" and assured Horst that it was straight from the deep south and would "knock out at seventy."[1] Horst said that he would be interested in buying a couple of ounces and that if the people he worked with liked it, he would arrange future purchases. Although Hodge stated that he wanted to complete the transaction in North Carolina where he had "scales and everything," Horst and Hodge ultimately agreed that they would arrange a transaction the following week in Virginia. Horst asked Hodge if he had a telephone answering machine on which he could leave a message. Hodge replied that his son did, but stated that he could not give Horst his son's number. Hodge told Horst that he would give Wendy another telephone number where Horst could contact him.

Two days later, after receiving a telephone number from Wendy, Horst dialed the number, identified as the son's telephone number, and recorded the conversation. After Horst identified himself as Jerry, the son said: "Let me see here. Maybe you can talk to him. He can kinda decide where we want to meet up there, wherever." Horst replied, "Well you all have got the stuff. I have got to go along with however you want to do it." The son responded, "Well let him talk to you and he can kinda tell you about when we can get up there." Hodge then came to the telephone and agreed to meet Horst at 2 p.m. the following Monday

---

[1] Horst later testified that in the drug trade "knock out at seventy" meant seventy percent pure. He further testified that he had never heard of cocaine referred to as "squares," but that different localities used different names to refer to cocaine.

at Spotsylvania Mall, near Fredericksburg, Virginia. They agreed on a price of $4,600 for two ounces.

On the day of the transaction, Horst and other police personnel in unmarked cars awaited the arrival of Hodge and his son at the Spotsylvania Mall. Horst was wearing a hidden microphone and was cautioned not to leave the parking lot. Shortly before 2 p.m., the son accompanied by Hodge, drove into the mall parking lot. Horst and Hodge got out of their vehicles to talk. Horst showed Hodge the money and asked if he could "see the stuff." Hodge replied that he didn't bring it with him and stated that he would rather that Horst follow them "just a short distance." Horst, however, said that he wanted to conclude the transaction in the parking lot as previously agreed. After some discussion between Horst and Hodge concerning whether they should finish the transaction elsewhere, the son joined them and stated: "This is too wide open for me. Have a place to go where it's private and you can look and see and do whatever you want to do . . . it's just down the road here. You can stay in your car. It ain't no big deal. You don't even have to get out. I'll bring it to you. If you want to get out, you can get out." Horst again refused to follow the Hodges, stating, "I'm not going to go nowhere . . . [t]he deal was for here . . . and it ain't here so I'll see you later."

Thereafter, Hodge and his son went back to their vehicle and drove out of the parking lot. The police followed them a short distance before pulling them over and frisking them. The police obtained the son's consent to search the vehicle and asked them both to have a seat on the sidewalk next to the vehicle. During the search of the vehicle, Horst noticed that the son had a towel draped over his knees and that his hands were moving underneath the towel. After searching the vehicle and discovering no contraband, Hodge and his son were placed under arrest and searched. The son had a key to a Fredericksburg motel room in his hand and six hundred and sixteen dollars in his sock.

The police obtained a search warrant for the motor inn room, which was registered in the son's name, and executed the warrant that day. They found a plastic bag of cocaine under the corner of a rug and .25 caliber semi-automatic pistol underneath the pillow. They also discovered two clothing bags containing men's clothing and toiletries. One bag contained the son's credit and business cards. The other bag contained Hodge's eyeglasses.

■ The Hodges initially contend that because the Commonwealth failed to prove beyond a reasonable doubt an agreement essential to support a conspiracy and, in addition, failed to prove an overt act to commit the offense, the evidence is insufficient to convict them of conspiracy. We disagree. "Conspiracy is defined as 'an agreement between two or more persons by some concerted action to commit an offense.'" *Cartwright v. Commonwealth*, 223 Va. 368, 372, 288 S.E.2d 491, 493 (1982)(quoting *Falden v. Commonwealth*, 167 Va. 542, 544, 189 S.E. 326, 327 (1937)); *see also Amato v. Commonwealth*, 3 Va. App. 544, 551, 352 S.E.2d 4, 8 (1987). The agreement is the essence of the offense; it is not necessary that the crime be fully consummated. *Amato*, 3 Va. App. at 553, 352 S.E.2d at 9. Moreover, "[a] conspiracy may be proved by circumstantial evidence." *Wright v. Commonwealth*, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982). "Indeed, from the very nature of the offense, [a conspiracy] often may be established only by indirect and circumstantial evidence." *Floyd v. Commonwealth*, 219 Va. 575, 580, 249 S.E.2d 171, 174 (1978).

In the present case, there was sufficient evidence to support the jury's finding that an agreement existed between Hodge and his son to sell cocaine. During the first telephone conversation between Horst and Hodge, Horst indicated that he wanted to "buy a couple ounces." Hodge stated to Horst: "I guess you want something you can put a cut on, don't you? . . . If this is sixty-five or seventy percent . . . you can go a pretty good cut." Hodge assured Horst that he would supply him with a seventy percent pure product and wanted to conclude the transaction in North Carolina where he had "scales and everything." From these references, a jury reasonably could infer that the transaction involved illegal drugs.

■ The evidence further establishes that the son agreed with his father to participate in the sale to Horst. "When one accedes to the conspiracy he sanctions what may have been previously done or said by the other in furtherance of the common object." *Amato*, 3 Va. App. at 553, 352 S.E.2d at 9. Although Hodge's initial reluctance to supply Horst with his son's telephone number might indicate that the son was not aware of the nature of the transaction at its inception, the son's subsequent actions support the conclusion that even if he was not initially involved in the transaction, he later became a full participant in the drug transac-

tion. Furthermore, when Horst talked to the son on the telephone the son stated that Horst should talk to Hodge to decide "where *we* want to meet up there." (emphasis added). When the Hodges and Horst met at the mall parking lot to conclude the transaction, the son, expressing concern about being in the open, agreed with Hodge that they should go elsewhere to conclude the transaction. After the arrest, the son was holding a key to a motel room which contained cocaine, a gun and the Hodges' personal belongings. When viewed in the light most favorable to the Commonwealth and granted all reasonable inferences, *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975), this evidence is sufficient to establish beyond a reasonable doubt an agreement necessary to support a conspiracy.

The Hodges also contend that the Commonwealth failed to prove an overt act, and that without such proof the conviction cannot stand. Relying solely upon *Crump v. Commonwealth*, 84 Va. 927, 941-42, 6 S.E. 620, 628 (1888), the Commonwealth argues that proof of an overt act in furtherance of the conspiracy is not necessary for conviction. Although the Court in *Crump* stated that no overt act is necessary to constitute the offense of conspiracy to injure persons in their business, the Court cited and relied upon evidence of significant overt acts in furtherance of the conspiracy in concluding that a conspiracy existed. *Id.* at 946, 6 S.E. at 629-30; *see also Ramsey v. Commonwealth*, 2 Va. App. 265, 270-71, 343 S.E.2d 465, 469 (1986)(reciting several overt acts in furtherance of the conspiracy but asserting that "[a] conspiracy is committed when the agreement to commit the offense is complete regardless whether any overt act in furtherance of the substantive offense is initiated").

We need not decide in this case, however, whether under Virginia law the absence of proof of an overt act to effect the object of the conspiracy is fatal to a prosecution for conspiracy to sell and distribute cocaine. The facts of this case provide numerous instances of overt acts. For example, the evidence conclusively establishes that Hodge and his son travelled from North Carolina to Virginia to meet Horst. They also negotiated with Horst to consummate the transaction in the parking lot. It is of no moment that these acts are neither criminal nor unlawful. The evidence need only establish that the acts effect the object of the conspiracy. *See Henry v. Commonwealth*, 2 Va. App. 194, 199, 342

S.E.2d 655, 658 (1986); *see also United States v. Medina*, 761 F.2d 12, 15 (1st Cir. 1985); *United States v. Caudle*, 758 F.2d 994, 997-98 (4th Cir. 1985); *United States v. Slocum*, 695 F.2d 650, 654 (2d Cir. 1982), *cert. denied*, 460 U.S. 1015 (1983); *People v. Bongarzone*, 116 A.D.2d 164, 169, 500 N.Y.S.2d 532, 536 (1986), *aff'd*, 69 N.Y.2d 892, 507 N.E.2d 1083, 515 N.Y.S.2d 227 (1987); *State v. Gessler*, 140 Ariz. 379, _____, 690 P.2d 98, 102 (Ariz. App. 1984); *State v. Stewart*, 452 So. 2d 186, 193 (La. App.), *writ denied*, 456 So. 2d 1014 (1984). Thus, even if overt acts to effect the object of the conspiracy must be proved, they were sufficiently established by the evidence in this case.

■ The Hodges next assert that the trial judge erred by admitting into evidence the cocaine seized from the motel room. They argue that the Commonwealth must prove actual or constructive possession before the cocaine may be offered in evidence. Citing *Clodfelter v. Commonwealth*, 218 Va. 619, 238 S.E.2d 820 (1977), they contend that mere occupancy of the room in which the cocaine was found did not prove either awareness of the presence and character of the cocaine or intentional and conscious possession. In *Clodfelter*, however, the Supreme Court stated that "[w]hile . . . *occupancy of the room where the drugs were found* did not create a presumption that [the accused] either knowingly or intentionally possessed the drug, . . . it *was a circumstance which could be considered by the court, along with the other evidence, in determining . . . guilt or innocence.*" 218 Va. at 623, 238 S.E.2d at 822 (emphasis added). Thus, contrary to the Hodges' assertion, *Clodfelter* does not support the assertion that the cocaine was inadmissible in this case.

■ The Commonwealth correctly asserts that evidence that the Hodges constructively possessed cocaine was probative of the object of the conspiracy. Indeed, as a defense to the indictment, the Hodges had contended that the evidence of conspiracy to sell or distribute cocaine was deficient because none of the statements made specific references to cocaine. "Evidence which bears upon and is pertinent to matters in issue, and which tends to prove the offense, is relevant and should be admitted." *Coe v. Commonwealth*, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986). Proof of constructive possession of cocaine, when combined with the other available evidence, establishes "facts or circumstances connected with the principal transaction, from which an inference can be

reasonably drawn as to the truth of [another] disputed fact."
*Karnes v. Commonwealth*, 125 Va. 758, 764, 99 S.E. 562, 564
(1919).

■ Although proof that cocaine is found on premises owned or
occupied by an accused is insufficient, standing alone, to prove
constructive possession, *see* Code § 18.2-250, such evidence is pro-
bative of possession and is a circumstance which may be consid-
ered along with other evidence. *Powers v. Commonwealth*, 227
Va. 474, 476, 316 S.E.2d 739, 740 (1984); *Clodfelter*, 218 Va. at
623, 238 S.E.2d at 822; *Behrens v. Commonwealth*, 3 Va. App.
131, 135, 348 S.E.2d 430, 432 (1986). In order to prove that the
Hodges, and not some previous occupants of the motel room, con-
structively possessed the cocaine, the Commonwealth was required
to "point to evidence of acts, statements, or conduct of the ac-
cused or other facts or circumstances which tend to show that
[they were] aware of both the presence and character of the sub-
stance and that it was subject to [their] dominion and control."
*Drew v. Commonwealth*, 230 Va. 471, 473, 338 S.E.2d 844, 845
(1986).

The evidence established that Hodge agreed to sell Horst "two
. . . squares" that would "knock out at seventy." Horst testified
that in his experience as a narcotics officer illicit drug dealers use
various euphemisms to identify drugs and do not "refer to cocaine
as cocaine." Horst also testified that Hodge's statements referred
to two ounces of 70 percent pure cocaine. The evidence further
established that Horst said to Hodge in the parking lot: "I got this
tube here and you can sprinkle a little shit in there. I see it fizz.
You get the money. You give me the dope and we get the hell out
of here." To which, Hodge responded, "Well, why don't you just
do that, Robby. What do you think?" The jury could reasonably
have inferred from this evidence that the transaction related to
cocaine.

Additional, abundant evidence supports that inference. Hodge
and his son arrived at the agreed location empty-handed and at-
tempted to convince Horst to consummate the transaction in a
place other than the mall parking lot. The son told Horst that
they wanted to conclude the transaction somewhere "private," a
place "just down the road." He further stated that Horst could
remain in his car and "[y]ou don't even have to get out. I'll bring
it to you." In the son's motel room the agreed upon quantity of

cocaine was later discovered. In addition to the two ounces of cocaine, police discovered the personal belongings of both men in the motel room, a circumstance which suggests that the room had been occupied by both and subject to their control. *See Ritter v. Commonwealth*, 210 Va. 732, 741, 173 S.E.2d 799, 805-06 (1970)(possession need not be exclusive).

Based on this evidence, the jury reasonably could have inferred that the private place referred to was the motel room and that the substance they intended to sell was the very cocaine seized from the motel. Such reasonable inferences, drawn from this evidence, were wholly within the province of the jury, and when coupled with the other evidence in this record, were sufficient beyond a reasonable doubt to sustain the convictions of conspiracy to sell or distribute cocaine. *See Webb v. Commonwealth*, 204 Va. 24, 34, 129 S.E.2d 22, 29 (1963).

*Affirmed.*

Coleman, J., and Cole, J., concurred.