COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Coleman and Bumgardner
Argued at Salem, Virginia


NATHAN ALLEN COMBS, S/K/A
 NATHAN ALLAN COMBS
                                        OPINION BY
v.     Record No. 1891-98-3   CHIEF JUDGE JOHANNA L. FITZPATRICK
                                      OCTOBER 26, 1999
COMMONWEALTH OF VIRGINIA


         FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
              B. A. Davis, III, Judge Designate

         Andrea C. Long (Charles C. Cosby, Jr.;
         Boone, Beale, Cosby & Long, on brief), for
         appellant.

         Virginia B. Theisen, Assistant Attorney
         General (Mark L. Earley, Attorney General,
         on brief), for appellee.


     Nathan Allen Combs (appellant) was convicted in a joint

bench trial with his wife, Lillie Combs, of solicitation of

money or other thing of value in connection with a placement or

adoption, in violation of Code § 63.1-220.4, and conspiracy to

solicit money or other thing of value in connection with a

placement or adoption, in violation of Code §§ 18.2-22 and

63.1-220.4.[1]  On appeal, he contends the evidence was

_____

        [1] Appellant was originally indicted for two counts of
solicitation of money or other thing of value in connection with
a placement or adoption under Code § 63.1-220.4 and one count of
conspiracy.  However, after trial, at the sentencing hearing, the
trial court granted appellant's motion to set aside one of the
solicitation charges.

insufficient to convict him of the offenses charged.  For the following reasons, we affirm.

## I.  BACKGROUND

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, the prevailing party below, granting to it all reasonable inferences fairly deducible therefrom.  See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997).  The judgment of a trial court, sitting without a jury, is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that it is plainly wrong or without evidence to support it.  See Stevens v. Commonwealth, 14 Va. App. 238, 240, 415 S.E.2d 881, 882-83 (1992).

The evidence established that appellant and Lillie Combs (Combs) married in January 1996.  Their daughter, A.C., was born October 23, 1996.  The family moved to a rented trailer in a mobile home park in April 1997.  By June 1997, appellant and his wife were experiencing severe financial difficulties.  Neither appellant nor Combs had a steady job, and their public assistance payments expired.  They sold a vehicle, furniture, and other items to pay for ordinary household necessities.

On June 13, 1997, Combs contacted Bill Devlin at Catholic Charities, an adoption agency in Roanoke.  Devlin met with

appellant and Combs at their home on June 20, 1997 and discussed with the couple placing A.C. for adoption through the agency. Appellant and Combs stated they were under a great deal of emotional and financial stress. Appellant asked if the agency or the potential adoptive couple could "help out with their situation." Devlin explained that any exchange of money or property in return for the child would be a violation of the law. Devlin agreed to return in a few days with the necessary legal documents and to take custody of A.C.

Devlin returned to appellant's home as agreed on June 23, 1997, but found no one at the trailer. Devlin saw Combs later that day, and she advised him that her mother was going to keep the child. Subsequently, Combs called Devlin and said she wanted to proceed with the adoption. However, Devlin never heard from Combs again.

Debbie Farthing (Farthing) testified that in July 1997, one month after appellant's initial meeting with Devlin, she met with appellant and Combs at their trailer. Farthing did not know appellant or Combs but understood that they were to be evicted from the trailer and that they wanted someone to take their baby. During the meeting, Combs sat and held the baby in the same room with Farthing and appellant. Appellant said they wanted someone to take the baby, wanted $1,500 to buy a truck and wanted to leave town. Combs offered no objection.

Appellant said an adoption agency "was wanting to take the baby" but that he "wasn't going to do it" because they were going to "make thousands of dollars off the baby." Appellant said he was not going to "give the baby away free." Farthing took A.C. with her after the meeting but returned the baby to appellant and Combs the same day because Farthing's husband refused to cooperate with the plan.

Thelma Farrar (Mrs. Farrar) was the owner of the mobile home park where the Combs lived. She visited appellant's trailer in late June or early July. At that time, Combs was in the living room holding her baby. Appellant told Mrs. Farrar that he would give her the baby in exchange for $1,000. Combs again offered no objection. Appellant also commented, "I wouldn't be selling her, there's not enough money in the world to buy my baby."

Appellant worked periodically for Bobby Farrar (Mr. Farrar) in a security business. While working on July 19, 1997, appellant asked Mr. Farrar if he and his wife had decided whether they wanted A.C. Appellant said he now wanted $2,000 for the child. Appellant indicated he wanted to use the money to catch up on his rent and buy a cheap car.

On July 23, 1997, Mrs. Farrar confronted appellant outside the trailer about his overdue rent payments. Appellant asked

Mrs. Farrar to "give [him] a little money" and accept A.C. for the rent he owed. Mrs. Farrar refused the offer.

Mrs. Farrar saw appellant outside his trailer two days later. Appellant said: "[T]hese nice people in the trailer are from Texas and they're going to take [A.C.]. I just want to see if you want her, because I would rather you have her than these people." Combs told Farrar the Texas couple was going to give them $3,000 for the baby. Mrs. Farrar responded that she did not have that kind of money. Combs left the trailer and asked Mrs. Farrar to call Molly, appellant's mother, and ask her to bring A.C.'s birth certificate. Mrs. Farrar saw the Texas couple put A.C.'s things in their car. The evidence also established that the Singletons, a couple from Texas, took A.C. from appellant's home to Texas within twenty-four hours of their having met Combs and appellant. However, the child was subsequently returned to Virginia and placed in the custody of appellant's mother.

Appellant testified that he was introduced to the Singletons by a mutual acquaintance. The Singletons visited with appellant and Combs at their trailer on July 25, 1997. Appellant further testified that when he approached Mrs. Farrar and the others he was only asking them to take care of A.C. for a short period of time. The trial judge accepted the Commonwealth's evidence and rejected appellant's testimony.

- 5 -

Accordingly, appellant was convicted of solicitation of money or other thing of value in connection with a placement or adoption, in violation of Code § 63.1-220.4, and conspiracy to solicit money or other thing of value in connection with a placement or adoption, in violation of Code §§ 18.2-22 and 63.1-220.4.

## II.  SOLICITATION OF MONEY

Code § 63.1-220.4, the statute under which appellant was convicted, prohibits, inter alia, the solicitation of money or any thing of value in connection with the placement or adoption of a child.  Under Code § 63.1-220.4,

> [n]o person or child-placing agency shall charge, pay, give, or agree to give or accept any money, property, service or other thing of value in connection with a placement or adoption or any act undertaken pursuant to this chapter . . . .  No person shall advertise or solicit to perform any activity prohibited by this section.  Any person violating the provisions of this section shall be guilty of a Class 6 felony.

(Emphasis added).

In the instant case, appellant contends the evidence was insufficient to establish that he violated Code § 63.1-220.4 because he did not "charge" or agree to accept any money, property or other thing of value in exchange for the adoption of A.C.  Additionally, he argues the Commonwealth failed to prove that he did, in fact, receive money from either the Singletons or any other party.  However, as the indictment clearly

- 6 -

indicates,[2] appellant was charged with violating Code § 63.1-220.4 by <u>soliciting</u> payment of money or other thing of value with the placement of A.C.

"Generally, the words and phrases used in a statute should be given their ordinary and usually accepted meaning unless a different intention is fairly manifest." <u>Woolfolk v. Commonwealth</u>, 18 Va. App. 840, 847, 447 S.E.2d 530, 534 (1994). The commonly accepted definitions for the word "solicit" include: "to make petition to," "entreat, importune," "to approach with a request or plea (as in selling or begging)." <u>Webster's Third New International Dictionary</u> 2169 (1993). Code § 63.1-220.4 contains a clear prohibition against the <u>request</u> or <u>plea</u> for payment of money or any other thing of value in connection with an adoption or the placement of a child.

In the instant case, the Commonwealth's evidence proved that appellant attempted to obtain money from Farthing, Mrs. Farrar, and the Singletons in exchange for placing his child,

---

[2] The amended indictment charged appellant with the following:

> On or about July 18, 1997, through July 25, 1997, in the County of Pittsylvania, Virginia, Nathan Allen Combs did unlawfully and feloniously, in connection with the placement or adoption of A.M.C., born October 23, 1996, solicit payment of money or other thing of value not specifically allowed by Code Section 63.1-220.4, Code of Virginia.

- 7 -

A.C., for adoption.  Appellant commented that he was not going to give A.C. away for free because he could make thousands of dollars for the child.  The trial judge accepted the Commonwealth's evidence and rejected appellant's testimony that he did not attempt to receive money in return for the placement or adoption of A.C.  "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented."  Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).  "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt."  Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

Considering the totality of facts and attendant circumstances, the evidence was sufficient to prove beyond a reasonable doubt that appellant was guilty of violating Code § 63.1-220.4 by soliciting the payment of money in connection with the placement of his child.

### III.  CONSPIRACY

Additionally, appellant was convicted of conspiring to violate Code § 63.1-220.4.  On appeal, he contends the evidence was insufficient to prove a conspiracy because the record "is

- 8 -

void of any conversation between [appellant] and [Combs] in which they agreed to sell their daughter." Accordingly, appellant argues the Commonwealth failed to prove that he and Combs conspired to unlawfully solicit payment of money or other thing of value in connection with the placement of A.C. We disagree.

"Conspiracy is defined as 'an agreement between two or more persons by some concerted action to commit an offense.'" Feigley v. Commonwealth, 16 Va. App. 717, 722, 432 S.E.2d 520, 524 (1993) (quoting Wright v. Commonwealth, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982)). Proof of an explicit agreement is not required, and the Commonwealth may, and frequently must, rely on circumstantial evidence to establish the conspiracy. See Stevens v. Commonwealth, 14 Va. App. 238, 241, 415 S.E.2d 881, 883 (1992). "[A] conspiracy may be inferred from the overt actions of the parties, and a common purpose and plan may be inferred from a development and collocation of circumstances." McQuinn v. Commonwealth, 19 Va. App. 418, 425, 451 S.E.2d 704, 708 (1994) (internal quotations and citations omitted), aff'd en banc, 20 Va. App. 753, 460 S.E.2d 624 (1995).

> Where . . . it has been shown that the
> defendants "by their acts pursued the same
> object, one performing one part and the
> others performing another part so as to
> complete it or with a view to its
> attainment, the [fact finder] will be
> justified in concluding that they were

            engaged in a conspiracy to effect that
            object."

Brown v. Commonwealth, 10 Va. App. 73, 78, 390 S.E.2d 386, 388

(1990) (citations omitted).

    The fact that the perpetrators of a crime are husband and

wife does not, without more, create an inference that they

conspired to commit the offense charged.  See Jones v.

Commonwealth, 11 Va. App. 75, 82, 396 S.E.2d 844, 848 (1990).  A

conspiracy, even one between husband and wife, requires a

showing of an agreement between the conspirators.  See, e.g.,

Stumpf v. Commonwealth, 8 Va. App. 200, 206, 379 S.E.2d 480, 484

(1989); Henry v. Commonwealth, 2 Va. App. 194, 197, 342 S.E.2d

655, 656 (1986).

    The evidence demonstrated a concerted plan of action by

appellant and his wife from June 13 to July 25, 1997, to place

their child in return for financial payment.  Combs first

contacted an adoption agency about the matter.  However, Devlin

advised appellant and Combs that they would receive no

remuneration in the arrangement, and they withdrew their

request.  In Combs' presence, appellant subsequently negotiated

with Farthing to exchange the baby for $1,500 and offered the

baby to Farrar for $1,000.  Appellant admitted on July 25, 1997

that they had agreed to give the baby to the Singletons for

$3,000.  While the Singletons were present at the trailer, Combs

tried to have A.C.'s birth certificate delivered.

- 10 -

Where two or more people act to pursue the same object, such as appellant and Combs, "one performing one part and the other performing another part so as to complete it or with a view to its attainment, [the fact finder] will be justified in concluding that they were engaged in a conspiracy to effect that object."  Amato v. Commonwealth, 3 Va. App. 544, 552, 352 S.E.2d 4, 9 (1987) (quoting 16 Am. Jur. 2d Conspiracy § 42 (1979)).  Considering all of the attendant circumstances, the evidence was sufficient to prove beyond a reasonable doubt that appellant and his wife conspired to solicit money in connection with an adoption and, in fact, did so.

For the foregoing reasons, appellant's convictions are affirmed.

Affirmed.