COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Chief Judge Huff,[*] Judges Chafin and Decker
Argued at Richmond, Virginia


GIANNA BIANCHA CICILESE

                                     MEMORANDUM OPINION[**] BY
v.      Record No. 2210-13-2           JUDGE TERESA M. CHAFIN
                                         FEBRUARY 10, 2015

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Joseph J. Ellis, Judge

Teresa L. Pagliaro for appellant.

David M. Uberman, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


      Gianna Biancha Cicilese ("Cicilese") was convicted of conspiracy to distribute marijuana

in violation of Code § 18.2-256 at the conclusion of a bench trial held in the Circuit Court of

Spotsylvania County ("circuit court").[1]  On appeal, she challenges the sufficiency of the

evidence supporting her conviction.  Specifically, Cicilese contends that the evidence failed to

establish that she conspired with another individual to distribute marijuana.  For the reasons that

follow, we agree with Cicilese's argument and reverse her conviction.

---

[*] On January 15, 2015, Judge Huff succeeded Judge Felton as chief judge.

[**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Cicilese was also convicted of possession with the intent to distribute more than five
pounds of marijuana in violation of Code § 18.2-248.1.  Although Cicilese challenged the
sufficiency of the evidence supporting this conviction, this Court denied her assignment of error
concerning this conviction on August 22, 2014.  Accordingly, this conviction is not before this
Court in this appeal.

I. BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). So viewed, the evidence established that Cicilese lived in Spotsylvania County with her parents and her child. On August 10, 2012, United States Postal Inspector Ann Hill ("Hill") contacted Detective Ray Haney, III, ("Haney") of the Spotsylvania Sheriff's Office concerning a suspicious package addressed to Cicilese's residence. The package was sent by an individual identified on the shipping label as Mike Estrada from Berkeley, California, and it was addressed to a "B.C. Company" at Cicilese's residential address. When Hill and Haney opened the package pursuant to a federal search warrant, they discovered that it contained six and a half pounds of marijuana packed in vacuum-sealed plastic bags.

Hill and Haney decided to deliver the package to Cicilese's residence, and Haney obtained an anticipatory warrant to search the residence after the package was delivered. When Hill delivered the package in an undercover capacity later that morning, Cicilese's father came out of the house "almost immediately" and accepted delivery of the package near her mail truck. Haney and other police officers executed the search warrant approximately five to ten minutes later. The police found Cicilese in an upstairs bathroom and the unopened package sitting just inside the door to the residence. Cicilese and her father were detained while the police searched the house, and the police read Cicilese her Miranda rights. Cicilese was distraught, and she screamed that the search was "just a government conspiracy against her and her father."

The police found evidence of marijuana use and distribution in almost every room of the house. In Cicilese's bedroom, the police found three glass tubs containing small amounts of marijuana labeled by type or strain and a scale capable of weighing pounds of marijuana. They

also found a marijuana grinder, a marijuana smoking device, a plastic bag containing smaller plastic baggies, and $2,000 in cash separated into $1,000 increments in her room. A disposable cell phone found in Cicilese's bedroom had received a text message on the morning of the search that said "the package was scanned at 10:18 in Spotsylvania and should be delivered soon." The package Hill delivered to the house that morning was scanned at the post office "[s]ometime close to the 10:18 mark."

The police found a hollowed-out book in the bathroom adjoining Cicilese's bedroom that contained numerous plastic baggies and a small digital scale. The book also contained a small piece of orange paper and two spiral notebooks that were later identified as "owe sheets" referencing transactions where marijuana was sold to other individuals on credit. A gold notebook that contained similar owe sheets referencing specific prices charged for various amounts of marijuana was found in a drawer in a downstairs computer room. Small amounts of marijuana and additional marijuana smoking devices were found in the computer room and in the bedroom of Cicilese's parents.

Cicilese was arrested following the search and charged with conspiracy to distribute marijuana in violation of Code § 18.2-256.[2] Specifically, a grand jury returned a true bill that indicted Cicilese for the following offense: "GIANNA BIANCHA CICILESE *On or about August 10, 2012*, did conspire, confederate, or combine with one or more other persons to manufacture, sell, give or distribute marijuana, in violation of [Code] §§18.2-256; 18.2-10 of the Code of Virginia (1950) as amended." (Emphasis added).

Haney was the only witness that testified at Cicilese's trial. The circuit court qualified him as an expert in "marijuana packaging and distribution in the County of Spotsylvania . . . and

---

[2] As previously noted, Cicilese was also charged with possession with the intent to distribute more than five pounds of marijuana in violation of Code § 18.2-248.1.

also in the field of marijuana importation by U.S. mail deliveries in Spotsylvania." Haney described the events leading up to the execution of the search warrant and the items seized from Cicilese's residence. He also testified that six and a half pounds of marijuana was an amount inconsistent with personal use and that the six and a half pounds of marijuana delivered to Cicilese's residence had an approximate value of $30,000. Haney testified that the amount of marijuana delivered to Cicilese's home, the presence of plastic baggies and scales, and the amount of bundled cash found in her bedroom were consistent with the distribution of marijuana.

Based on the prices listed in the owe sheets found in the gold notebook, Haney concluded that someone living in Cicilese's residence was selling marijuana for approximately $325 per ounce. From this price, Haney determined that the amounts of marijuana sold in each transaction varied. Haney believed that "anywhere from small gram amounts . . . all the way up to quarter pounds to half pounds" of marijuana were being sold to other individuals on credit, without the seller demanding full payment at the time of each transaction. According to Haney, the owe sheets showed that three people had purchased a half a pound of marijuana each. Haney testified that an individual buying a half-pound of marijuana was likely buying it for resale.

Haney noted that the handwriting on the owe sheets was written in two distinct styles. The handwriting on one of the owe sheets was in cursive, while the handwriting on the other owe sheet was in print. Haney admitted, however, that both sets of handwriting could have been written by a single person and recognized that a person may change his or her style of handwriting. Neither party presented expert testimony providing analysis of the handwriting, and the owe sheets and the gold notebook were admitted into evidence.

Cicilese moved to strike the conspiracy charge against her at the close of the Commonwealth's evidence. In response, the Commonwealth argued that the evidence established "three really strong indicia of conspiracy." The Commonwealth argued that the

different sets of handwriting on the owe sheets showed that more than one person worked on them. The Commonwealth then argued that another individual had to mail the package containing the marijuana to Cicilese from California. The Commonwealth also contended that Cicilese incriminated her father as a co-conspirator in her distribution enterprise when she claimed that the government was conspiring against them collectively. The Commonwealth concluded that each of these circumstances established that Cicilese conspired with another individual to distribute marijuana. The circuit court agreed and denied Cicilese's motion to strike the conspiracy charge. Cicilese renewed her motion to strike at the close of all evidence, and the circuit denied her motion and convicted her of the charged offense. Cicilese appealed her conviction to this Court.

## II. ANALYSIS

When considering the sufficiency of the evidence on appeal, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002); see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*). Under this standard, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 662, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). It asks instead whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson, 443 U.S. at 319). We do not "substitute our judgment for that of the trier of fact" even if our opinion were to differ. Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts

- 5 -

in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

"Conspiracy is defined as 'an agreement between two or more persons by some concerted action to commit an offense.'" Zuniga v. Commonwealth, 7 Va. App. 523, 527, 375 S.E.2d 381, 384 (1988) (quoting Wright v. Commonwealth, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982)). "The agreement is the essence of the offense; it is not necessary that the crime be fully consummated." Merritt v. Commonwealth, 55 Va. App. 719, 734, 689 S.E.2d 757, 765 (2010) (quoting Hodge v. Commonwealth, 7 Va. App. 351, 355, 374 S.E.2d 76, 79 (1988)). "[A] defendant may wittingly aid a criminal act and be liable as an aider and abettor, but not be liable for conspiracy, which requires knowledge of and voluntary participation in an agreement to do an illegal act." Zuniga, 7 Va. App. at 527, 375 S.E.2d at 384 (alteration in original) (quoting United States v. Bright, 630 F.2d 804, 813 (5th Cir. 1980)).

"'[T]he Commonwealth must prove beyond a reasonable doubt that an agreement existed.'" Id. at 528, 375 S.E.2d at 384 (quoting Floyd v. Commonwealth, 219 Va. 575, 580, 249 S.E.2d 171, 174 (1978)). However, "'[a] conspiracy may be proved by circumstantial evidence. Indeed, from the very nature of the offense, [a conspiracy] often may be established only by indirect and circumstantial evidence.'" Merritt, 55 Va. App. at 734, 689 S.E.2d at 765 (quoting Hodge, 7 Va. App. at 355, 374 S.E.2d at 79). An explicit agreement to commit an offense is not required, and "[a] common purpose and plan may be inferred from a 'development and collocation of circumstances.'" Brown v. Commonwealth, 10 Va. App. 73, 77, 390 S.E.2d 386, 388 (1990) (quoting United States v. Godel, 361 F.2d 21, 23 (4th Cir.), cert. denied, 385 U.S. 838 (1966)).

Cicilese contends that the evidence presented by the Commonwealth failed to prove that she conspired with another individual to distribute marijuana on August 10, 2012. We agree.

- 6 -

While the evidence was sufficient to prove that Cicilese intended to distribute the marijuana she received on August 10, 2012, it was insufficient to allow a factfinder to conclude that Cicilese agreed with anyone to distribute marijuana on that date. Specifically, the evidence failed to establish that Cicilese conspired to distribute marijuana with: (1) the individual that shipped the marijuana to her from California, (2) the three individuals identified in the owe sheets that received half pounds of marijuana from her on credit, or (3) her father.

### A. THE CALIFORNIA SHIPPER

"[E]vidence of a distribution offense absent an agreement will not suffice to support a conspiracy conviction." Zuniga, 7 Va. App. at 528, 375 S.E.2d at 385. "As a general rule a single buyer-seller relationship, standing alone, does not constitute a conspiracy." Id. To establish a conspiracy to distribute an illegal drug, the evidence must demonstrate "(1) 'that the seller knows the buyer's intended illegal use,' and (2) that by the sale [the seller] intends to further, promote and cooperate in [the venture].'" Id. at 529, 375 S.E.2d at 385 (alterations in original) (quoting Direct Sales Co. v. United States, 319 U.S. 703, 711 (1943)).

When a seller sells a significant quantity of an illegal drug to a buyer, the seller can infer that the buyer intends to further distribute the drug illegally. See Zuniga, 7 Va. App. at 529, 375 S.E.2d at 385. "Proof of such knowledge alone, however, is insufficient to convict" a person of conspiracy to distribute an illegal drug. Id. The crucial issue to be determined is whether the evidence demonstrated that that the seller "intend[ed] to further, promote and cooperate in" the distribution venture. Id. The evidence does not have to establish that the seller "knew the entire scope or details of the plan of distribution." Id. at 531, 375 S.E.2d at 386. Rather, the evidence only needs to establish that the seller was aware of "the essential nature of the scheme." Id. The evidence does not have to establish a "regular, sustained and prolonged" course of conduct between the buyer and the seller, but evidence of a credit relationship between the parties may

- 7 -

demonstrate that the seller intended to further, promote, and cooperate in the buyer's enterprise. See id. at 530-31, 375 S.E.2d at 386.

In the present case, no evidence established that the individual who shipped the marijuana to Cicilese from California intended to further, promote, or cooperate in her distribution of it. While the shipper could infer that Cicilese intended to distribute the marijuana from the large amount of marijuana sent in the package, the evidence failed to demonstrate that he or she intended to participate any further in Cicilese's enterprise. No evidence suggested that this distribution was part of an ongoing course of conduct between Cicilese and the shipper rather than a one-time sale, or that the shipper financed the sale of the marijuana by extending credit to Cicilese for its purchase. No evidence established that Cicilese and the seller had reached an agreement to cooperate concerning any further distribution of the marijuana. Accordingly, the evidence was insufficient to prove that Cicilese conspired to distribute the marijuana with the individual that shipped it from California.

### B.  THE INDIVIDUALS FROM THE OWE SHEETS

Haney testified that the various owe sheets found in Cicilese's residence demonstrated that three people had each bought a half pound of marijuana from her. Haney further testified that Cicilese sold this marijuana to these buyers on credit. On appeal, the Commonwealth argues that Cicilese conspired to distribute marijuana with these individuals. The Commonwealth contends that Cicilese knew that these individuals would resell the marijuana she distributed to them and that she intended to share in the profits from these sales.

Although the Commonwealth failed to make this argument to the circuit court,

> [w]hen a defendant challenges on appeal the sufficiency of the
> evidence to sustain his [or her] conviction, the appellate court has a
> duty to examine all the evidence that tends to support the
> conviction. . . . [T]his examination is not limited to the evidence

- 8 -

> mentioned by a party in trial argument or by the trial court in its
> ruling.

Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008).  Therefore, we must consider the evidence of Cicilese's distributions of marijuana to other individuals referenced in the owe sheets found by the police during the search of her home.

As previously stated, evidence establishing that a seller distributes illegal substances to other parties on credit may demonstrate that the seller intends to promote and cooperate in further distributions of the substance by the buyer.  See Zuniga, 7 Va. App. at 530-31, 375 S.E.2d at 386.  "Such financing techniques, which may be innocuous in a normal commercial setting, evidence an inappropriate and sinister practice when used in the sale of commodities which are per se unlawful."  Id. at 530, 375 S.E.2d at 386.  Extending credit to buyers of illegal substances makes the purchase "financially feasible" and allows the distributing buyer to conduct his or her sale of the illegal substance "on reduced capital outlay."  Id. at 530-31, 375 S.E.2d at 386.  Further, the seller is often paid from the proceeds of the buyer's sale of the illegal substance, and thereby he or she maintains a stake in those sales.  See id. at 531, 375 S.E.2d at 386.

While the credit arrangement between Cicilese and the buyers of the half pounds of marijuana may be sufficient to establish a conspiracy to distribute marijuana between them, it failed to establish that Cicilese conspired with them to distribute marijuana on August 10, 2012.  No dates appeared on the owe sheets establishing when the marijuana was actually sold, and notes from the gold notebook were dated from 2009.  Furthermore, no evidence established that these transactions were related to the marijuana Cicilese received in the mail on August 10, 2012.  The transactions listed in the owe sheets could have taken place years before Cicilese

received the marijuana at issue in the present case. Accordingly, the owe sheets did not prove that Cicilese conspired to distribute marijuana on August 10, 2012.[3]

## C. CICILESE'S FATHER

The Commonwealth also contends that the evidence established that Cicilese conspired to distribute marijuana with her father. Although the evidence suggested that Cicilese's father may have used marijuana in the home and been aware of her distribution activities, it failed to prove that he ever agreed to participate in her distribution enterprise.

An agreement to distribute drugs cannot be inferred from mere "[p]roof that two persons possessed drugs in the same dwelling." Jones v. Commonwealth, 11 Va. App. 75, 82, 396 S.E.2d 844, 848 (1990). Additionally, a conspiracy cannot be inferred solely from a familial relationship between the parties. See Combs v. Commonwealth, 30 Va. App. 802, 811, 520 S.E.2d 400, 404 (1999). "A conspiracy, even one between husband and wife, requires a showing of an agreement between the conspirators." Id.

Ample evidence in this case implied that Cicilese's father knew that she used and distributed marijuana. Marijuana and marijuana smoking devices were found in almost every room of the Cicilese residence, including the father's bedroom. This evidence, however, did not establish that Cicilese's father agreed to distribute marijuana with her. Further, while Cicilese's father actually accepted delivery of the package in question, no evidence established that he knew what the package contained. He did not open the package, and the fact that he accepted its delivery was not inconsistent with his status as a resident of the house. Although he quickly met

---

[3] We also note that the evidence failed to establish the degree of Cicilese's stake in any further distributions made by the buyers of the marijuana. In Zuniga, the seller expressly knew that he would be repaid with proceeds from the buyer's sale of the illegal substance the following day. Zuniga, 7 Va. App. at 525, 375 S.E.2d at 383. In the present case, however, no evidence established that the buyers actually resold the marijuana they bought from Cicilese or that Cicilese was repaid for the marijuana with proceeds from those sales.

Hill at her truck when she delivered the package, the evidence indicated that he was working on a computer next to the door of the residence and therefore saw the delivery truck arrive.

The Commonwealth contends that the two distinct sets of handwriting on the owe sheets established that Cicilese conspired to distribute marijuana with someone else that lived in the house. No evidence, however, established that Cicilese's father wrote on the owe sheets rather than someone else that lived in or visited the residence. Additionally, the evidence did not conclusively establish that two different individuals wrote on the owe sheets. Although one of the owe sheets was written in print and another was written in cursive, Haney testified that one person could have switched the style of his or her handwriting and written both sheets. Furthermore, no expert evidence regarding the handwriting established that it was written by two different people.

Moreover, evidence establishing that the owe sheets were written by two different individuals would not necessarily establish that those individuals conspired to distribute marijuana together. Both individuals could have been distributing marijuana separately. Also, someone could have simply written on one of the owe sheets to assist Cicilese on one isolated occasion without agreeing to distribute marijuana with her. "Evidence which merely establishes aiding or abetting in the commission of the distribution offense will not suffice to prove a conspiracy." Zuniga, 7 Va. App. at 529, 375 S.E.2d at 385; see also Jones, 11 Va. App. at 82, 396 S.E.2d at 848 ("Proof that two persons possessed drugs in the same dwelling, where one is observed packaging and another selling, is sufficient to establish that each possessed drugs with the intent to distribute, but absent any proof, direct or circumstantial, that the two were acting in concert, an agreement between them to distribute drugs cannot be inferred.").

The Commonwealth also argues that Cicilese's statement concerning the "government conspiracy against her and her father" established that she conspired to distribute marijuana with

- 11 -

him.  While the statement showed that Cicilese perceived that the police were conspiring against her and her father collectively, it did not establish that they agreed to distribute marijuana together.  The police detained Cicilese and her father while they searched their residence, and they gathered evidence of marijuana possession and distribution by both of them.  Cicilese's statement simply referenced the police action that affected both her and her father and showed her concern that both of them could be charged (wrongly, in her opinion) with the possession of marijuana.  It did not establish that she and her father conspired to distribute marijuana together.

While the circumstances of this case indicated that Cicilese and her father used marijuana together, the evidence failed to establish that they conspired together to distribute marijuana.  The evidence failed to prove any agreement between Cicilese and her father concerning the marijuana delivered on August 10, 2012 or any other marijuana.

### III.  CONCLUSION

In conclusion, we hold that the evidence of this case did not establish that Cicilese conspired to distribute marijuana with any other individual on August 10, 2012.  No evidence established that the individual that shipped the marijuana to Cicilese from California agreed to have any further involvement in its distribution.  While Cicilese may have conspired with individuals listed in the owe sheets to distribute marijuana, no evidence established that these conspiracies were related to the conspiracy offense with which Cicilese was charged.  Further, the evidence did not establish that Cicilese agreed to distribute marijuana with her father or any other individual that lived in her house.  For these reasons, we reverse and dismiss Cicilese's conspiracy conviction.

Reversed and dismissed.